IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

NAUTILUS INSURANCE COMPANY,

       Plaintiff,

v.

3000BAR NASHVILLE, LLC,

       Defendant.

Case No. _____

[JURY DEMAND]

**COMPLAINT FOR DECLARATORY JUDGMENT AND RESCISSION**

Plaintiff, Nautilus Insurance Company ("Nautilus"), by and through its undersigned counsel, and pursuant to 28 U.S.C. §§ 2201-2202 and Rule 57 of the Federal Rules of Civil Procedure, hereby seeks Declaratory Judgment against Defendant 3000Bar Nashville, LLC for the purpose of determining a question of actual, immediate controversy between the parties. Nautilus respectfully shows the Court as follows:

**PARTIES**

1. At all pertinent times to this action, Nautilus was, and still is, a company organized and existing under the laws of the State of Arizona with its principal place of business in Scottsdale, Arizona.

2. Upon information and belief, Defendant 3000Bar Nashville, LLC ("3000Bar") was, and still is, a limited liability company organized and existing under the laws of the state of Tennessee with its principal place of business in Nashville, Tennessee.

3. At all relevant times, Defendant 3000Bar operated a bar located at 1516A Demonbreun Street, Nashville, Tennessee called "3000 Bar" (the "Establishment").

4. Nautilus issued Policy No. NN1377594 to named insured 3000Bar for the policy period of March 8, 2022 to March 8, 2023 (the "2022 Policy"). A copy of the 2022 Policy is

attached hereto as **Exhibit "A."**

5. Nautilus issued Policy No. NN1517947 to named insured 3000Bar for the initial policy period of March 8, 2023 to March 8, 2024 (the "2023 Policy") as a renewal of the 2022 Policy and based on the representations made in the application for the 2022 Policy. The 2023 Policy was canceled by 3000Bar on April 21, 2023. A copy of the 2023 Policy is attached hereto as **Exhibit "B."**

6. On October 13, 2023, Allison Heppner filed a lawsuit against 3000Bar in the Circuit Court of Davidson County, Tennessee, captioned *Alison Heppner v. 3000Bar Nashville, LLC*, Case No. 23C2413 (the "Underlying Lawsuit") for which 3000Bar sought coverage under the 2022 Policy. In the Underlying Lawsuit, Heppner alleges that while she was standing outside of the Establishment in December 2022, she was shot by a person that was located inside the Establishment and seeks damages for her injuries allegedly occurring as a result of 3000Bar's negligence in failing to maintain a safe premises. A copy of the complaint in the Underlying Lawsuit is attached hereto as **Exhibit "C."**

## JURISDICTION AND VENUE

7. For the purposes of diversity jurisdiction, upon information and belief Defendant 3000Bar Nashville, LLC's two members are Brian Hedrick and Sasha Qualkenbush. Upon information and belief, Mr. Hedrick is a citizen and resident of Alabama and Ms. Qualkenbush is a citizen and resident of Tennessee. Upon information and belief, neither Ms. Qualkenbush nor Mr. Hedrick are citizens or residents of Arizona and otherwise maintain no principal place of business in Arizona.

8. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship among the Plaintiff and Defendant (including 3000Bar's

PD.44658743.1

two LLC members) and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted below occurred within this judicial district.

10. The Court has personal jurisdiction over 3000Bar on the basis that 3000Bar is incorporated and maintains its principal place of business in Tennessee.

## NATURE OF CLAIM

11. This is an action for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201-2202 and Rule 57 of the Federal Rules of Civil Procedure, for the purpose of construing and interpreting the terms of an insurance contract and for a determination of the rights and obligations, if any, of the parties with respect to the 2022 Policy and 2023 Policy (collectively, the "Policies").

12. Count I of this Complaint seeks rescission of the Policies pursuant to Tenn. Code. Ann. § 56-7-103 due to material misrepresentations by 3000Bar in the negotiation of, or in the application for, the Policies. Nautilus seeks a declaration that the Policies issued to 3000Bar were issued in reliance upon material misrepresentations and/or omissions that materially increased the risk of loss and that, consequently, Nautilus is entitled to rescind the Policies void *ab initio*. Specifically, Defendant made material misrepresentations or omissions with regard to crimes that had occurred or been attempted at the Establishment prior to the submission of the application for insurance as well with regard to occurrences prior to the submission of the application that could give rise to claims.

13. Count II of this Complaint—in the alternative if it is determined by the Court that the 2022 Policy should not be rescinded and declared void *ab initio*—seeks a declaration that the

2022 Policy's Assault and Battery Limited Liability Coverage provisions limit the indemnity coverage available to 3000Bar to $25,000 with respect to the claims of Heppner in the Underlying Lawsuit and that the 2022 Policy precludes coverage for any punitive damages that may be awarded against 3000Bar in the Underlying Lawsuit.

14. In addition to the foregoing provisions of the 2022 Policy, Nautilus pleads all other conditions, terms, warranties, limitations, definitions, and exclusions of the Policy, which also may be found to be applicable, and Nautilus reserves the right to amend its Complaint for Declaratory Judgment and Rescission as additional and/or more specific information becomes available.

15. All conditions precedent to the filing of this action have been performed or have occurred.

## THE APPLICATION

16. On or about February 28, 2022, 3000Bar submitted to Nautilus a Commercial Insurance Application (with Commercial General Liability Section) and Restaurant/Tavern Application (collectively, the "Application"), attached hereto as **Exhibit "D."**

17. In response to the Application's question of "Have any crimes occurred or been attempted on your premises within the last three (3) years?" 3000Bar responded, "No." (Ex. D., p. NIC_00125).

18. The Application's loss history section requires the applicant to "Enter all claims or losses (regardless of fault and whether or not insured) or occurrences that may give rise to claims for the last 8 years." In response, 3000Bar checked the box indicating "none." (Ex. D., p. NIC_00121).

19. The application was signed by 3000Bar's principal, Brian Hedrick. Defendant's insurance agent, Clayton B. Taylor., Jr. also signed the Application. (Ex. D., p. NIC_00121;

Case 3:24-cv-00830    Document 1    Filed 07/10/24    Page 4 of 15 PageID #: 4
PD.44658743.1
4

NIC_00133).

20.     Based on the Application, and in reliance on the representations therein, Nautilus issued the Policies to 3000Bar.

## THE POLICIES

21.     The 2022 Policy provides commercial general liability ("CGL") insurance to named insured 3000 Bar Nashville, LLC, subject to certain terms, conditions, limitations, and exclusions.

22.     Coverage A of the 2022 Policy's CGL Coverage Form Insuring Agreement provides that Nautilus "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies" and that Nautilus "will have the right and duty to defend the insured against any 'suit' seeking those damages." The 2022 Policy further states that this "insurance applies to 'bodily injury' . . . only if . . . [t]he 'bodily injury' . . . is caused by an 'occurrence' . . . ." The term "occurrence" is defined in the 2022 Policy to mean "an accident." (Ex. A, Form CG 00 01 04 13; p. NIC_00013; NIC_00027). The 2022 Policy generally provides a $1,000,000 limit of liability for CGL coverage. (Ex. A., Form S150 (07/09); p. NIC_00012).

23.     Section IV of the Policies' Commercial General Liability Conditions contain 3000Bar's representations in accepting the respective Policies as the named insured, including as follows: "By accepting this policy, you agree: a. The statements in the Declarations are accurate and complete; b. Those statements are based upon representations you made to us; and c. We have issued this policy in reliance upon your representations." (Ex. A., Form CG 00 01 04 13; p. NIC_00024-00025).

24.     In addition to the above-described terms, the 2022 Policy contains certain terms

PD.44658743.1

that preclude or otherwise limit coverage under the 2022 Policy.

25. Pursuant to the 2022 Policy's Assault or Battery Limited Liability Coverage form (the "Assault or Battery Form"), the 2022 Policy provides limited coverage for liability for assault or battery as follows:

> **C.** In return for the payment of the premium shown in the Schedule and subject to all the terms of this Coverage Part, we will provide you insurance for Assault or Battery Liability, but only as indicated in this endorsement and subject to the liability limits and provisions as set forth in this endorsement. The Limits of Insurance shown in the Schedule are the only Limits of Insurance available to any insured under this Coverage Part, to which this insurance applies.
>
> **D.** The following is **added to 1.a. Insuring Agreement of Section I - Coverage A - Bodily Injury And Property Damage Liability:**
>
> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to any person arising out of an "assault" or "battery" "event" that takes place in the "coverage territory". We will have the right and duty to defend an insured against any "suit" seeking those damages. However, we will have no duty to defend any insured against any "suit" seeking damages for "bodily injury" or "property damage", to which this insurance does not apply. We may, at our discretion, investigate any "event" and settle any claim or "suit" that may result. But:
>
> 1. The amount we will pay for damages is limited as described in **I.** and **J.** below; and
>
> 2. Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements of any claim or "suit" against any insured.
>
> \* \* \*
>
> **I.** The following is added to **Section III - Limits Of Insurance**:
>
> 1. **Assault or Battery Liability Each Event Limit**
>
> Subject to the Assault or Battery Liability Aggregate Limit

shown in the Schedule, the Assault or Battery Liability Each Event Limit shown in the Schedule is the most we will pay for the sum of all "bodily injury" or "property damage" because of "assault" or "battery" arising out of any one "event".

* * *

(Ex. A., Form L100 (12/19); p. NIC_00037-00038).

26. The 2022 Policy's Assault or Battery Form's Schedule provides that the "Assault or Battery Liability Each Event Limit" is $25,000. (*Id.*, p. NIC_00036).

27. Pursuant to the 2022 Policy's Exclusion - Punitive or Exemplary Damages (the "Punitive Damages Exclusion"), the 2022 Policy "does not apply to punitive or exemplary damages, including but not limited to those damages that may be imposed to punish a wrongdoer or to deter others from engaging in similar behavior." (Ex. A., Form L217 (06/17); p. NIC_00043).

## THE UNDERLYING LAWSUIT AND NAUTILUS' INVESTIGATION

28. On October 13, 2023, Heppner filed her complaint in the Underlying Lawsuit alleging that, in the late evening on December 31, 2022, she was standing outside on the sidewalk in front of the Establishment waiting for her ride when she heard a gunshot sound. (Ex. C., p. NIC_00114, ¶ 5).

29. Heppner's complaint alleges that, almost immediately thereafter, she realized she had been shot in her arm by a bullet that was fired from within the Establishment and, as a result, she had to be taken to the hospital. (Ex. C., p. NIC_00114-00115, ¶ 5-6, 9).

30. In her complaint in the Underlying Lawsuit, Heppner asserts that 3000Bar was aware of security issues at the Establishment in the several years preceding her being shot, and that 3000Bar was negligent in failing to provide a safe environment inside and within the immediate vicinity of the Establishment and otherwise failed to maintain a safe and orderly premises such that it foreseeably resulted in her being shot and sustaining damages. (Ex. C.,

p. NIC_00115-00116, ¶ 13, 20, 22).

31. As a result of the shooting, Heppner is seeking compensatory damages and punitive damages from 3000Bar in the Underlying Lawsuit. (Ex. C., p. NIC_00117).

32. On or about November 9, 2023, 3000Bar provided notice of the Underlying Lawsuit to Nautilus under the 2022 Policy, which was the first notice that Nautilus had received regarding either the shooting of Heppner or the Underlying Lawsuit. Nautilus agreed to provide a defense to 3000Bar in the Underlying Lawsuit pursuant to a complete reservation of rights.

33. In the course of its investigation, Nautilus discovered that, in the approximately two years preceding the shooting of Heppner, 3000Bar had been the site of a number of criminal occurrences that necessitated the response of the Metropolitan Nashville Police Department.

34. Per a press release from the Metropolitan Nashville Police Department, in April 2023, as a result of the frequent criminal activity at the Establishment, Tennessee 20th Judicial District Criminal Court Judge Steve Dozier entered an order declaring 3000Bar to be a public nuisance and enjoining 3000Bar from operating or entering the Establishment. (*See* "MNPD Padlocking 3000 Bar on Demonbreun Street as a Public Nuisance," April 7, 2023, https://www.nashville.gov/departments/police/news/mnpd-padlocking-3000-bar-demonbreun-street-public-nuisance).

35. In support of the petition for abatement of public nuisance with regard to 3000Bar, the State of Tennessee filed a notarized "Affidavit in Support of Abatement for Nuisance" (the "Affidavit") signed by affiant Detective M. Collazo of the Metropolitan Nashville Police Department on April 4, 2023. The Affidavit is attached hereto as **Exhibit "E."**

36. The sworn Affidavit reveals that the investigation into 3000Bar was commenced due to "numerous calls, incidents, and complaints" from citizens and business owners, who "have

Case 3:24-cv-00830    Document 1    Filed 07/10/24    Page 8 of 15 PageID #: 8
PD.44658743.1

described the establishment as being a location where violence occurs regularly." (Ex. E, p. NIC_00135).

37. Specifically, the affidavit notes that between January 1, 2021 through March 31, 2023, the police answered at least 101 calls for service relating to the Establishment for "homicides, shootings, robberies, aggravated assaults, assaults, thefts, complaints of excessive noise, alarm responses, vehicles blocking the right of way, medical calls, vehicle burglary, disorderly calls, and miscellaneous calls." (Ex. E, p. NIC_00135-00136).

38. Per the Affidavit, from January 1, 2021 until February 24, 2022 (the date of the Application), the police responded to calls regarding the Establishment 59 times, with approximately half of those responses due to calls or reports of violent crime such as shootings, fights, and assaults. (*See* Ex. E, p. NIC_00136-00145).

39. The Affidavit further reveals that in April 2021, the Metropolitan Nashville Police Department met with a majority of the business owners in the area of the Establishment to discuss "the increase in crime and calls for services" and strategies for de-escalating situations between patrons of their establishments. Representatives of 3000Bar were present at this meeting. (Ex. E, p. NIC_00152, ¶ 1).

40. Other similar such meetings were held in August 2021 and March 2022, and the Affidavit provides that 3000Bar was "made aware of these meetings, participated in discussions regarding the increase in crime and the severity of the incidents reported for this portion of Demonbreun Hill, and were provided guidance on how to mitigate the issues that were creating a nuisance to the community." (Ex. E, p. NIC_00153, ¶ 5).

41. The Affidavit further notes that on March 13, 2023, The Tennessee Alcoholic Beverage Commission suspended 3000Bar's liquor license due to the failure of 3000Bar to provide

adequate security, maintain law and order, and seek timely license renewal. (Ex. E., p. NIC_00152).

42. Prior to being notified of the events giving rise to the Underlying Lawsuit, the existence of the Underlying Lawsuit, or discovery of the above-referenced criminal activity that had occurred at the Establishment, Nautilus issued the 2023 Policy to 3000Bar as a renewal of the 2022 Policy and based on the representations made by 3000Bar in the Application.

43. On January 30, 2024, Nautilus issued correspondence to 3000Bar providing Nautilus' coverage position with respect to the Underlying lawsuit and reserving rights as to various issues with respect to the Policies (the "ROR"). A copy of the ROR is attached hereto as **Exhibit "F."**

44. In the ROR, Nautilus reserved its right to rescind the Policies (and have them declared void *ab initio*) specifically with respect to any misrepresentations in the Application as to crime at the Establishment as well as past occurrences at the Establishment that may give rise to claims. (Ex. F, p. NIC_00157-00158). Additionally, the ROR provided that the defense in the Underlying Lawsuit was being provided under the 2022 Policy subject to a full reservation of rights and specifically noted Nautilus' position that coverage under the 2022 Policy for the claims of Heppner would be limited to $25,000 due to the terms of the Assault or Battery Form and that the Punitive Damages Exclusion would preclude coverage with respect to any punitive damages awarded to Heppner in the Underlying Lawsuit. (Ex. F, p. NIC_00161-00162).

## COUNT I – DECLARATORY JUDGMENT FOR RESCISSION

45. Nautilus adopts and incorporates by reference all allegations contained in Paragraphs 1 through 44 as though fully set forth herein.

46. Nautilus, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 and

Tenn. Code. Ann. § 56-7-103, seeks a declaratory judgment that it may rescind the Policies based upon the material misrepresentations and/or omissions of 3000Bar in the negotiation of, or application for, the Policies and that Nautilus has no obligation to provide a defense to, or indemnify, 3000Bar under the Policies with respect to the claims in the Underlying Lawsuit or otherwise on the basis that they are void *ab initio*. Such a declaration will confer certainty on the parties with respect to their rights and obligations under the Policies and will therefore serve the interests of justice.

47. Upon information and belief, Brian Hedrick, as a duly authorized representative of 3000Bar, made material misrepresentations and/or omissions on the Application related to prior crime and prior occurrences that could give rise to claims.

48. Specifically, 3000Bar expressly represented to Nautilus in the Application that no crimes had occurred or been attempted on the premises of 3000Bar within the three years preceding the submission of the Application, which Application was dated February 24, 2022. (Ex. D, p. NIC_00125).

49. However, as evidenced by the Affidavit, numerous crimes had been attempted and/or committed at the Establishment from at least January 1, 2021 up until the time of the Application and issuance of the Policies.

50. By way of example, the Affidavit notes that police responded to the Establishment on March 21, 2021 as a result of individuals that began fighting inside the Establishment whose affray spilled out onto the street in front of the Establishment leading to one individual brandishing a firearm and firing rounds into the air (Ex. E, p. NIC_00138, ¶ 11); on March 23, 2021 due to a report from an individual that they had been assaulted at the Establishment by several other individuals (Ex. E, p. NIC_00138, ¶ 14); on May 7, 2021 resulting from security at the bar

reporting that a victim had been pushed through the front glass of the Establishment during an altercation (Ex. E, p. NIC_00139-00140, ¶ 23); and on June 20, 2021 due to individuals fighting and brandishing guns at the Establishment (Ex. E, p. NIC_00141, ¶ 36).

51. Additionally, the Affidavit provides that on March 5, 2022—three days prior to the inception of the 2022 Policy—an individual standing outside the front door of the establishment fired a gun and a person in a building across the street was hit with a stray bullet. (Ex. E, p. NIC_00145, ¶ 61).

52. The foregoing are several examples of dozens of similar occurrences at the Establishment in the approximately one-year period leading up to the issuance of 2022 Policy that were recorded in the Affidavit.

53. In the Application, 3000Bar also represented that there had been no occurrences that may give rise to claims in the eight years preceding the date of the Application. (Ex. D., p. NIC_00121).

54. However, the Affidavit reveals that there were a number of occurrences that could potentially result in claims against 3000Bar in the time leading up to the submission of the Application.

55. For example, the Affidavit notes that the police responded to the Establishment due to a patron reporting that they were assaulted by an employee acting as a manager of the Establishment on January 7, 2021 (Ex. E, p. NIC_00136, ¶ 1); an individual requiring medical attention after being body slammed on the ground by the Establishment's security on July 27, 2021 (Ex. E, p. NIC_00142, ¶ 43); the Establishment's security fighting with a patron on October 30, 2021 (Ex. E, p. NIC_00143, ¶ 50); and an individual reporting that they had been assaulted while inside the Establishment on December 23, 2021. (Ex. E, p. NIC_00144, ¶ 57).

56.     Nautilus relied upon and was influenced by 3000Bar's representations regarding prior crime and occurrences that could give rise to claims in evaluating the risk of issuing the Policies and fixing the rate of premiums under the Policies.

57.     3000Bar's misrepresentations as exemplified above were of such importance that they naturally and reasonably influenced Nautilus' judgment in determining whether to issue the Policies on the terms so issued and further materially increased the risk of loss.

58.     Nautilus contends it is entitled to rescind the Policies pursuant to Tenn. Code. Ann. § 56-7-103 and other applicable law.

WHEREFORE, Plaintiff Nautilus prays that this Honorable Court:

(a)     Enter a declaratory judgment declaring that Plaintiff, Nautilus, may rescind, the Policies pursuant to Tenn. Code. Ann. § 56-7-103 and other applicable law;

(b)     award Plaintiff, Nautilus, the costs of this action; and

(c)     award any other relief the Court deems just and proper.

## COUNT II – DECLARATORY RELIEF

59.     Nautilus adopts and incorporates by reference all allegations contained in Paragraph 1 through 58 as set forth herein.

60.     Strictly in the alternative, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, Nautilus seeks a judicial declaration of its rights and duties to 3000Bar under the 2022 Policy with respect to the claims in the Underlying Lawsuit. Such a declaration will confer certainty on the parties with respect to their rights and obligations under the 2022 Policy and therefore will serve the interests of justice.

61.     Nautilus contends that, if it is determined that the 2022 Policy is not void *ab initio*

due to the misrepresentations in the Application as detailed above, any indemnity coverage owed to 3000Bar with regard to the Underlying Lawsuit shall be limited to $25,000 per the 2022 Policy's Assault or Battery Form.

62. Heppner's complaint in the Underlying Lawsuit alleges that she sustained injuries and damages after being shot by a person at the Establishment. (Ex. C, p. NIC_00115, ¶ 11-12).

63. Nautilus therefore contends that the claims and alleged damages that are the subject of the Underlying Lawsuit arise out of an actual or alleged assault and/or battery as those terms are defined in the Policy.

64. As such, per the terms of the 2022 Policy's Assault or Battery Form, any indemnity coverage for Heppner's claims in the Underlying Lawsuit is limited to $25,000.

65. Furthermore, the Underlying Lawsuit seeks an award of punitive damages against 3000 Bar (Ex. C, p. NIC_00117, ¶ 25).

66. Nautilus thus contends that there is no coverage for any award of punitive damages against 3000Bar in the Underlying Lawsuit pursuant to the Punitive Damages Exclusion.

WHEREFORE, Plaintiff Nautilus prays that this Honorable Court

(a) enter a declaratory judgment declaring that Plaintiff, Nautilus, would owe only $25,000 in indemnity coverage to 3000Bar for the claims in the Underlying Lawsuit under the 2022 Policy in the event it is determined that the Policies are not void *ab initio*;

(b) enter a declaratory judgment declaring that Plaintiff, Nautilus, owes no coverage under the 2022 Policy with respect to any punitive damages awarded to Heppner in the Underlying Lawsuit;

(c) award Plaintiff, Nautilus, the costs of this action; and

(d) award any other relief the Court deems just and proper.

Respectfully submitted,

RAINEY, KIZER, REVIERE & BELL, PLC

By: *s/ Bradford D. Box*
BRADFORD D. BOX (BPR No. 016596)
*Attorney for Plaintiff*
209 East Main Street
P.O. Box 1147
Jackson, Tennessee 38302-1147
(731) 423-2414—phone
(844) 757-2329 —fax
bbox@raineykizer.com

PD.44658743.1